*In Re* Z. KALAI, Esq., Police Justice of North Kohala, Hawaii.

EXAMINATION FOR ALLEGED MISCONDUCT IN OFFICE.

IN VACATION. MARCH, 1888.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

It is misconduct in a Judge to have interviews with a person accused in his Court of an offense, and suggest points of defense to him and to ask and obtain loans of money from the accused to be repaid without interest.

This, with other similar transactions, and the unsatisfactory accounting by the Judge to the Auditor-General of the fines and costs received by him, deemed sufficient cause for his removal from office.

OPINION OF THE COURT, BY JUDD, C.J.

The respondent Z. Kalai, Esq., who is Police Justice of North Kohala, Hawaii, having first received his appointment to that office on the 1st October, 1884, was complained of by the

17

Attorney-General according to the provisions of Section 914 of the Civil Code as amended by the Act of 1866, and he was regularly cited to appear and answer the charges.

The complaint alleges substantially, as good cause for his removal from office, that pending the trial of one M. R. Freitas in Respondent's Court, on a charge of selling spirituous liquors without a license, it was agreed between said Freitas and respondent that in consideration of a bribe in money to be paid by Freitas to respondent, the latter would acquit him of the charge; that on the 7th November last, respondent did acquit Freitas and receive from him on the next day the sum of $200. The complaint contains also a general charge that respondent is notoriously dishonest, corrupt and unreliable in the discharge of his judicial functions and totally unfit to hold a judicial office.

Upon a careful investigation of the evidence we find the substantial facts to be, that very shortly previous to the 31st October last, the day when Freitas was arrested upon the warrant charging him with selling spirituous liquors without a license, the Judge had borrowed $50 of him, to be repaid in a fortnight without interest, Freitas having only been in business in Kohala as a storekeeper some two months and being a comparative stranger to the Justice, who, though being quite extensively engaged in business, had had no previous dealings with this man, not being a regular customer of his, only having bought $1 worth of goods from him.

On the evening of the day of his arrest, Freitas, not being acquainted with the Hawaiian language, took one Francisco Cano, who speaks Hawaiian well, with him and went to the Judge's house, visiting the Deputy Sheriff on the way. Cano acted as interpreter between Freitas and the Judge and says that Freitas asked the Judge through him for advice as to what he had best do, that he had sold no liquor as the Judge well knew, and finally said if the Judge would help him he would give him $50, to which the Judge nodded an assent and said he must put his defense on by witnesses. They found the Judge

lying on a mat in his bedroom, reading, and Freitas and Cano sat near the door, and Cano finally sat down on the mat. When the conversation was finished, the Judge and Freitas went out on to the veranda alone and Cano heard the chink of money, his inference being that coin passed between them. The trial began on the 3d November, and the Court heard the three witnesses for the prosecution and four of the witnesses for the defense and took an adjournment to the 7th. That evening Freitas' son and bookkeeper went with Cano to the Judge's house at about 9 o'clock and told the Judge, as they had told the Deputy Sheriff on the way over, that the witnesses for the prosecution owed Freitas debts at the store and wanted to get out of them by prosecuting him on a false charge. The Judge said, If you have good evidence, it will be all right, and you bring your account books and if they show what you say, have them in Court.

On the way to Court on the 7th, the Judge told Freitas's Attorney to stop in and get the books of account to be used as evidence. The Judge heard the rest of the evidence and acquitted Freitas, saying, among other things, that the books showed that the witnesses for the prosecution were debtors of Freitas. The Judge's explanation is this: It was a common defense to storekeeper's bills that they were really for liquor, which could not legally be collected. The next day the Judge asked for a loan of $50 from Freitas and it was made to him on the 9th, Freitas taking it to him at his house and the Judge giving him a note due in one month, which is not yet paid.

The Judge admits that he borrowed $50 from Freitas a week or so before the arrest, and borrowed another $50 from him two days after his acquittal and got an extension of the former loan at the same time. Freitas himself substantiates this and they both say the first $50 was repaid, the Judge says in January last.

The Judge denies the corrupt offer to bribe him and his acceptance of any money from Freitas to influence his judgment in the case.

We are much impressed with the truthfulness of Cano, but are unwilling upon his testimony alone to come to the conclu- sion that the money was actually paid to the Judge as a bribe. But the respondent's utter want of appreciation of the dignity and purity which should surround a Magistrate, which is evidenced by his being a willing party to two interviews between him and a man charged with an offense, in which his case was discussed and in which he suggested points of defense, and his seeking loans without interest from a defendant in such circumstances, would indicate that he is not unassailable by corrupt influences.

Who could trust a Judge that would do such things? The community would have a right to believe that he was susceptible to bribes, and as it is essential to the proper administration of justice that the community should have confidence in the integ- rity of those who administer the law, we do not feel authorized to allow the respondent to longer remain in this responsible position.

There is other similarly objectionable conduct proven against him. A policeman, T. B. Arcia, says that a Chinaman, Ahoe, was to be tried one morning for an offense and stood at the door of the Court House waiting for the Judge with some money in his hand, and when he came, shook hands with the Judge, who clasped both his hands over the Chinaman's and they had a whispered conversation, and then the Judge went into Court; the case was called and the defendant acquitted. The Judge admits that he received some money from the Chinaman as above, but says it was rent which was owing.

The respondent's accounts to the Auditor-General are very unsatisfactory. He is required by law to send monthly to the Treasury all fines and costs received by him and to furnish monthly an account of his receipts and disbursements to the Auditor. It so happens that since 1st January, 1887, but one amount which his account to the Auditor shows was remitted to the Treasury corresponds with the amount actually remitted, and the sum total of actual remittances for this period exceeds by $150.70 the sum called for by his reports.

The fact is, he made remittances hap-hazard and, at the end of every month, got from the Deputy Sheriff the fines which had been paid in and from it paid out shares of fines, and for services of process to unpaid police, etc., and made up an account which contained only the net amounts and did not state the payments made by him.

The Judge says he was unable to send these accounts monthly to the Auditor as there was no one in the district before whom he could swear to the correctness of the account and he had to await the coming of the Circuit Judge before he could do this. But this is no reason why the accounts should not correspond with the amount remitted, even if not sworn at the time they were made up.

So far from this balance in his favor being creditable to the respondent, as urged by his counsel, it makes it impossible to ascertain, except by other data not accessible, whether the account is a correct statement of all sums received by him.

Upon the admitted facts we think the usefulness of Mr. Kalai, as Police Justice of Kohala, is at an end, and consider that good cause has been shown for his removal from office, and it is so ordered.

*C. W. Ashford* (Attorney-General), for the prosecution.

*J. L. Kaulukou*, for respondent.